sales arising from that portion of said cargo which was taken from said ship in a wet, damaged, and perishing condition, and also fifty per centum upon the net amount of sales of the materials saved from said ship; to be paid to said salvors according to their respective interests therein."]

[Cited in Baker v. The Slobodna, 35 Fed. Rep. 542; The John and Albert, Case No. 7.338.]

[Nowhere reported; opinion not now accessible.]

---

## Case No. 118.

### The A. J. VIEW.

[Blatchf. Pr. Cas. 143.][1]

District Court, S. D. New York. April, 1862.

PRIZE—VIOLATION OF BLOCKADE—ENEMY PROPERTY.

Cargo and appraised valuation of vessel condemned as enemy property, and for a violation of the blockade.

In admiralty.

BETTS, District Judge. The above vessel, owned by a citizen of New Orleans, and registered there, by authority of the Confederate States, on the 20th of November, 1861, was captured by the United States public ship New London on the 28th of November, 1861, in Mississippi sound, laden with a cargo of turpentine and tar. The cargo was the property of Black, the supercargo. Neither the manifest nor any other papers on board the vessel designate the voyage contemplated to be made; but it appears, from the testimony of the master and the mate, on their examination, and by the written parole given by the supercargo on the arrest of the vessel, that the cargo and vessel were destined for Balize, in Honduras. The evidence in the case is unequivocal that the voyage was undertaken by the mutual concurrence of the owner of the vessel and the owner of the cargo, to evade the blockade at the port of New Orleans, and that they were both of them, at the time, residents of that place, and well aware of the existence of the blockade. The supercargo was an Englishman by birth, but had been for many years prior to the seizure of the cargo, residing with his family at New Orleans, and doing business there. The owner of the vessel, though a native of the state of New York, had been for many years settled in business in New Orleans, and a resident there with family. He purchased the vessel, and had her registered to him in his own name, and on his oath that he was a citizen of the Confederate States, on the 20th of November, 1861. Jecker v. Montgomery, 13 How. [54 U. S.] 498; Id., 18 How. [59 U. S.] 110; Fay v. Montgomery, [Case No. 4,709.]

After the capture, the flag officer of the United States squadron ordered an appraisement of the vessel, and appropriated her to the use of the United States government, and

---

[1][Reported by Samuel Blatchford, Esq.]

transmitted her cargo and officers, on the United States vessel supply, to the port of New York, to the cognizance of the United States prize court. The prize was thus brought fully under the cognizance of this court. Proceeds of Prizes of War, [Case No. 11,440.]

Upon the proofs in the suit produced by the attorney for the United States, no one appearing to contest the same, it is ordered that a decree be entered condemning the appraised valuation of the vessel and the cargo seized on board of her, with costs, and directing a distribution of the proceeds thereof, according to law.

---

### AKEN, (WARBURTON v.)

[See Warburton v. Aken, Case No. 17,143.]

---

## Case No. 119.

### AKERLY v. VILAS.

[1 Abb. U. S. 284;[1] 2 Biss. 110;[1] 1 Chi. Leg. News, 161; 8 Amer. Law Reg. (N. S.) 229.]

Circuit Court, Seventh Circuit, D. Wisconsin. Feb. Term, 1869.

REMOVAL OF CAUSES—TIME OF MAKING APPLICATION.

1. A state court has no power to entertain an appeal or other proceeding to review an order made in such court granting a petition to remove a cause from the state court to a court of the United States; nor can the state court withhold or delay the transfer of the record from its clerk's office to the United States court pending any such review.

2. An application in a state court for the removal of a cause to a United States court, made after trial and judgment in a state court of original jurisdiction, and judgment of a state court of appellate jurisdiction, which in effect reverses the judgment below and orders a new trial or hearing, is in season, where the application is made under the act of March 2, 1867, (14 Stat. 558,)—which authorizes the petition to be filed at any time "before the final hearing or trial" of the suit. The reversal and order for a new trial or hearing open the case to litigation the same as if no judgment had ever been rendered.

[3. Cited in Kellogg v. Hughes, Case No. 7,662; McCallon v. Waterman, Id. 8,675. Questioned in Hancock v. Holbrook, 27 Fed. Rep. 402, as to the point that it is not necessary that the plaintiff or defendant, consisting of more than one party, should be collectively so situated as to authorize a removal.]

This was a motion by the plaintiff, a citizen of the state of New York, for an order allowing him to file in this court copies of the process, pleadings, depositions, testimony and other proceedings in this cause, the clerk of the state court from which removal was sought having refused to make and certify such copies. This case had been pending in the circuit court of Dane county, which on

---

[1][Reported by Josiah H. Bissell, Esq., and also by Benjamin Vaughan Abbott, Esq., and here compiled and reprinted with permission. The syllabus is from 1 Abb. U. S. 284, and the statement from 2 Biss. 110.]